Here he is, here he is, here he is, here he is. We have come forth for the second Commission hearing. It is now open for assent to adjourn. The Honorable Donald C. Hudson will present. Please be seated. Good morning, everyone. This is Case No. 2-14-1026, the people of the state of Florida and the staff of the Horak Defendant Accounts. Pardon me, Mr. Hildebrand, the Defendant Accounts. Mr. Jack Hildebrand, I'm doing it on behalf of the defendant's family, the defendant's family. Pardon, Mr. Hildebrand, on behalf of the appellant, you may proceed. Thank you. May it please the Court, my name is Jack Hildebrand, and I'm representing Mr. Horak in this appeal. The issue that I have raised in this case is whether post-conviction counsel provided unreasonable assistance for not attaching supporting documents or affidavits or other evidence to the petition and for not explaining why such evidence was not attached to the petition. You talk about a threshold question. There seemed to be an issue of timeliness, and as you know, the issue is if we find that the petition sets forth a culpable claim of actual innocence, then the time limitations set forth in the post-conviction act do not apply, correct? Yes. The trial court found that it did set forth the claim of actual innocence, correct? Yes, sir. Okay. State is contesting that in the appeal? No. State is agreeing that the timeliness is not a factor? Oh, that's the only thing that they're contesting, is the timeliness. They didn't – the State did not address the merits or the issue that I raised. Right. So basically we have two parts. If we find that it sets forth a culpable claim of actual innocence, timeliness is not an issue, then we examine the reasonable assistance argument, correct? Yes, I would agree with that, right. Okay. So you want to tell us in summary why it is setting forth a culpable claim so timeliness does not apply? Well, he's basically claiming here with this letter that the police department, they basically framed him, and that's the gist of that letter. And you can't get more of an actual claim of innocence than that. He's saying, I didn't do it. I was framed. He testified in trial. He didn't do it. That's referencing the letter from Attorney Ritaka that says, Correct. Hey, I talked to a detective. He said initially when they interviewed the minor child, she only interpreted her mother. She said nothing about you. It wasn't going to mention you, and then the officers allegedly detectives twisted the mother's arm or the daughter's arm, and then she ended up testifying against the father. Is that right? Right. It's implying that the police manipulated the child into accusing the defendant. Ritaka used the language that the police told him that they switched it to falsely accuse him, correct? Right. But the trial judge, you mentioned earlier, the trial judge considered the argument of actual innocence, but he did not find that it made out a claim because he said if it were offered, it would just be mere impeachment. Isn't that ultimately what he said, that it would just be impeachment? I kind of think that he said that. And the impeachment would not likely change the result of the trial? I don't recall him saying that, but if that's what he said, that's perfectly okay. That's the way he reached the merits of it and acknowledged it. Sure. It does raise the issue, but then he reached the merits and said, and then of course he went on to say that there's no supporting evidence, no evidentiary support for it, no verified affidavits, et cetera. Right. I think that's the part that I was going to get to. Yes, well, claims of actual innocence are almost always impeachment. Just because that's the nature of it. It's like, for example, if somebody said, I saw the defendant shoot a guy. Most of the actual innocence claims have resulted in exonerations that has been DNA evidence or other substantive evidence, not mere impeachment. Well, in those cases, I would have to agree with you on that. Okay. But, for example, if somebody says, well, I saw this guy, the defendant, shoot this person, and it wasn't my brother, it was this guy, and then after the trial they find out that this guy was actually incarcerated at the time of the shooting and couldn't have seen it, that would just be impeachment of that person, because he could still come into trial and say, well, I wasn't. Right. In this case, if this case were to result in a new trial and SJ testifies consistent with the testimony of the first trial, it would just be mere impeachment, wouldn't it? Right. And if in a DNA case a state comes in and says, we're sticking by our original DNAs, then that would be impeachment too. And even with DNA cases. It's always going to be impeachment of somebody if they're going to stick with their story. So, moving on to the second part, the unreasonable assistance, can you summarize, I mean, I think it sort of jumps out at us, but what are the specific reasons why the assistance was unreasonable? Well, first of all, we shouldn't be here discussing this case because 651C, if it's followed, we'll never have this issue come up. I think 651C is perfectly written to avoid exactly what we're doing here today. You're referring to the obligation that 651C requires counsel to attempt to obtain evidentiary support for the position? That's exactly what you're saying? That's exactly what I'm leaning into. Well, and she's also alleging that there may have been miscommunications, which is another issue that is raised by 651, to communicate with the client. Right. And that brings up another issue. It's like if there was a miscommunication, and she's just adding these on at the last minute here, while she's adding these on, I mean, did she even investigate? Did she even discuss them? I mean, we don't even know about that. But the specific unreasonable representation is, first of all, she did not add any kind of evidence to the petition to support this Ritaka claim. Well, did she even attach Ritaka's letter to the petition? No, I think that she just simply forgot or just didn't think she needed to. I can't imagine what the reason would be. If she's going to include it in the petition, she has to follow 651C, which says that you have to attach supporting information or evidence to support that claim. And if you don't, then you have to explain why. And I think that's the part that the cases in the past have overlooked, is that requirement. It's not a suggestion. You have to do that. If you don't have supporting evidence, you have to explain why. And counsel didn't do that in this case. We have lots of cases that say at first stage, and even at second stage, it's hard to get an affidavit from an attorney who was involved. But in this case, we have something different in that the lawyer actually gave him a letter. Why would it have been so difficult to get an affidavit from Mr. Ritaka? In my opinion, it would not have been difficult to get a response from him. This case is different from a lot of cases where we have an identifiable source of evidence that would support the claim. That's Mr. Ritaka. He's an attorney. He wrote the letter. They got the letter. There is an identifiable source where the counsel could have gone to and asked him, hey, first of all, did you write the letter? And second of all, will you provide an affidavit confirming what's in this letter and identify the detective? That would be the first step that reasonable counsel would have taken in this case. And it's a real easy one because it's pretty easy to contact an attorney and have them do that. And apparently we don't know if that happened. And why? Because 651C wasn't followed. Like I said before, if it's followed, we'll never have this because she would have to explain why there is no affidavit. Well, maybe looking at her first claim in the first amended petition of the petition she filed, she was alleging some sort of conflict and, you know, there wasn't an appropriate conflict because Mr. Ritaka made himself a witness in the case. Isn't that some indication that she may have done some investigation? Because I'm assuming he made himself a witness by issuing this letter. So can we take something from that particular allegation in her first petition? It shows that she did read something. I don't think it was the letter that they were talking about. It was a contact in the jail prior to that trial. Well, then she did something. I mean, she must have looked at something. Yes, she did. Okay. She looked at something. By not attaching the letter, that's inexplicable, isn't it? I mean, is there any ostensible reason? It's inexplicable. Inexplicable. And it is showing that she did not comply with her duties as an attorney under 651C. Besides the letter, what else are you – you alluded to some affidavits. What else are you alleging she should have done besides attach Ritaka's letter? Well, that's pretty much it. I mean, she did not do what she was supposed to do about this issue that she did raise. And that's the only issue. Shouldn't there have been some affidavits obtained on that? Correct. From who? From Ritaka and from the detective. Who they – pretty self-evident who interviewed the victim. It's in our Rule 23 order, correct? Yeah, I mean, there's got to be somebody involved for him to say something like that. And, you know, the 651C, if it's followed, we won't have to guess. We won't have to presume. We will know. We'll have a record to go by. And right now, we don't have a record. And if it had been done, I wouldn't be making this argument. And it prevents – you know, this case is – we have an attorney making this statement. You can't have attorneys going around making a statement like this and having there be no response. Well, you also have the attorney who authored this letter has not exactly come into this case with clean hands. Mr. Ritaka, his conduct was questionable. Would you agree? Yes. And so maybe that explains a little bit of it. That may explain a little bit, but we can't get into the, you know, start weighing credibility at the second stage. And that's why 651C is so perfectly written up because if you don't get an affidavit, you have to explain why. So if Mr. Ritaka was somehow saying, hey, I'm not talking to you or whatever, then the attorney can report that. And to me, it would suggest that, hey, this demands an evidentiary hearing. Let's bring him in here under subpoena and have him explain himself. That gets to our – what should our order read? It shouldn't be to send it back for a hearing. Would you agree? I agree. It's for compliance with 651. Absolutely. That's what it's for. It's for second stage proceedings with different counsel that will follow 651C. But not necessarily for a hearing. There may not be a hearing. But right now, we're just guessing. We're just guessing or we're going to try to presume something. And that statute doesn't allow for presumptions. It may allow the circuit court to presume that counsel did everything because the circuit court doesn't have any allegation to ensure that counsel filed 651C. It's up to counsel to do that. And that's why a judge can dismiss this thing outright if it's totally frivolous without supporting affidavits. If it's left in a form that demands that it be found frivolous despite counsel being – handing this document in without following the rules, the judge has no obligation to say, hey, where's your affidavits? And if you don't have them, why don't you have them? There's no obligation. But this doesn't relieve counsel of the obligation. It's counsel's obligation. And how do we tell counsel followed the rule? Just by looking at the rule and seeing if counsel did that. Didn't do anything that would suggest that she did follow the rules. The letter was attached to the pro se petition, correct? Right. He had the sense to do it. But counsel, for whatever reasons that we don't know, did not follow the rules. And if she had some problem with that letter, then she has to explain why it wasn't attached. We don't have to guess why or presume why she didn't. The rule says she has to tell us why. So the rule, if the rule is followed, then we have a record that we can actually make a ruling on. Even though Mr. Ritaka's conduct in this case may be called into question because of the Tiffany visit, he's had some other problems generally in Lake County that have come up in cases that we have heard. Is there anything that you're aware of that might prevent her from wanting to get into those on behalf of her client? I mean, he has had a history of what he claims himself is some depression and possible mental illness. No, I do not see that as being something where counsel would not be following the rules because she would have to explain that to the judge. I mean, the rule accounts for that. It says if you don't attach it, explain why. It's just like if she decided, like, this entire petition is frivolous, I'm not doing anything. Well, I think under that people versus pace, I think it says, well, you can stand the petition, but you have to explain why you're finding that this frivolous. So whenever an attorney in a post-conviction petition is not going to follow and follow up on these, you have to explain why you're finding that the petition is frivolous and why you're not amending it. Because you only have to amend a petition if it's not frivolous. All right, thank you very much, Mr. Holder. Thank you very much. That's the court agenda rebuttal. Ms. Kripke, on behalf of the people. Ms. Kripke, listening to your cough on the way in, the air on your vacation must not have been suitable. Joan Kripke, on behalf of the people of the state of Illinois, also. We stand on our grief that the case was, that the PC was untimely filed. Does the timeliness provisions apply to an actual innocence claim? No, they don't. But I think that Judge Shaines properly found that whatever, well, first of all, the allegations with Ritaka did not rise to the level of actual innocence. And I think that what we're forgetting here is usually with actual innocence. You didn't brief that issue. You didn't address that in your brief. What page of your brief did you address that issue? Actual innocence. The end. Starting on page 11. Well, page 11 is at the very, very end. Your primary issue. Don't you read my brief to the end? Yes. Okay, good. But when you put something at that far at the end, one thinks that that's not your primary point of reference. Okay. We instruct you to put your best issue first. And I think the best issue first is that this was simply not timely. But if it is an actual innocence claim and it is colorable, then we don't have that issue. But that's the issue. Is it colorable? And my response is no, it's not. And I think Judge Shaines properly found that it was not. If we're going to look at this statement that's triple or quadruple hearsay by Ritaka, it ultimately goes back to what is the victim saying, making the victim told the detective or the detective told the, you know, it involves the victim. We know who the victim is. And the victim testimony was very clear at trial and was corroborated by the testimony of the person from the child advocacy center. And the testimony about the details about the sex toys was corroborated by the evidence that was found where the child said it was this. Let's assume all that's true for the sake of the argument as they say. Ritaka's letter and the allegations in the original petition are that essentially the defendant was framed. Right? I mean, that's what he is saying. If the victim came in and never said anything about him at all, it was all about her mother. But she testified at trial and she testified against him and her mom at trial. The allegation is she was manipulated by the police. She was manipulated by the police. Then why was she testifying against her mother at trial? Well, that's the question that the attorney should be asking. Because please, the letter clearly says that detectives told the lawyer that they switched it to falsely accuse you. That's what the letter says. They switched what? You don't address that in your brief. The lack of exhibits is precisely the lack of evidentiary support or affidavits is precisely the argument. You're making the argument. There's nothing there because the attorney didn't do anything. No, there's nothing there because the child testified contrary to this statement. The police officer testifies to impeach that and testifies that they, the police officers, knew that the child was lying when they said it was the defendant because they are the ones who planted that idea. You're suggesting that that would not support a claim of actual nuisance? Yes, I'm saying it would not. Because the child, what you have before you, that's an allegation. And what you have before you, first of all, in your opinion, found the child to be credible. They had access to the child. They had access to the detectives. How can this be newly discovered evidence? How is it that he found this out afterwards? Ritaka had access to all these people. It's not like he never had access to these people and could not have discovered it prior to trial. When the defendant is aware, becomes aware of, after the trial, the letter is dated after the trial. It's sent to him while he's in the penitentiary. And it says he's been told. And then he says in the letter, at the appropriate time, someone will have to track this down. They switch it to falsely to you. And then he explains that at the appropriate time, somebody will have to investigate these claims. Well, isn't post-conviction the appropriate time? But he was at the post-conviction counsel. Okay. What's the appropriate time to track down evidence of actual innocence? Post-conviction, right? But the letter itself does not, it implies, but it's not positive that Ritaka didn't know this beforehand. But actual innocence also has to rise to something that you absolutely could not have discovered prior to trial. And he had access to the child. He had to cross-examine the child. He had access to the detectives prior to trial. What does Rule 651C require appointed counsel to do in order to provide a quote-unquote reasonable level of assistance? Well, according to People v. Malone, which is a case that came out, a third district case that came out, it's 2017. Let me ask you, what does 651C say? What does it say? Consult. Are you asking to supplement with that particular case? Well, I can't remember when I filed. When did I file it? It was 2-14-126. Yes, I am. Yes, I am, because it was after. It was after. So in that case, what they're saying is an attorney, a PC attorney, has ethical obligations not to raise all kinds of stuff that they don't think is appropriate. And then what this particular case was talking about was affidavits. And they said, if the claims are frivolous, PC counsel has the option of standing on the allegations in the pro se petition or to withdraw as counsel. The defendant does not make any recommendation as to how counsel could have improved the petition. And then they say, there is no showing of the existence of any facts or evidence on which such affidavits could have been found. Absent a showing of available material for supporting affidavits, a failure to present affidavits obviously cannot be considered a neglect by the attorney. And then they say, counsel is not required to go on a fishing expedition to find facts and evidence outside the record that might support the defendant's claims. Can you tell us succinctly, if you could, how a letter that surfaces after the trial from the trial counsel saying, hey, by the way, you were framed, is something that can justifiably be left off the PC petition? How does counsel ignore that kind of an evidentiary item? Does it matter that the counsel says, hey, you were framed? The letter itself is so vague. And Ritaka, as I'm going to say it again, Ritaka had access to all these people. He doesn't say when he learned this. But Ritaka is not the petitioner. This is the defendant's case. Ritaka may have known about it for years. And that's why it doesn't come to the level. The allegation is correct that the defendant didn't find out about it at all until after the trial. It's got nothing to do with Ritaka. You can't hold that against the defendant when Ritaka did. That's why it's a post-conviction petition. And the letter says, I just recently. And 651, I think, is what, 651 says to post-conviction counsel, when is just recently? And if Ritaka had talked to all the detectives and knew this before, once again, post-conviction counsel even needs to go to Ritaka and say when, who, how, and why, or explain why that didn't happen, and none of that is in this petition. Okay, so I agree with that. Obviously, I can't say, oh, yes, it's there, I didn't see it. Clearly, she did not do that. But then the question comes up to, is this unreasonable assistance? And the answer is no, because what could these, what the detectives testified, these people testified they were not impeached at trial. This is not newly discovered evidence. It can't be, because if Ritaka was doing his job, then they would have been able to uncover this prior to trial. And let me ask you this. What is the harm, then, of remanding this case back for full compliance with 651, not for a hearing, but for some lawyer to pick up the phone and say, what was this about? When was this conversation? Who did you speak to? So the question is, are you remanding it? My question is this. Do you agree, you just agree with Justice Hudson's question, that there's nothing in there to explain the absence of an affidavit? Explain it. The lawyer says to detectives, at some point in time, this is after trial. This is new information to the defendant. Otherwise, why would he be telling him in a letter? What is the harm in sending it back and having post-conviction counsel flesh it out and explain why I didn't get affidavits, because this is, as you suggest, it is nonsense. It's going nowhere. It's a dead end. That's the problem. A reasonable level of assistance, there's three requirements. Consult with your client, examine the record, and amend or provide an explanation as to why you haven't furnished affidavits or other materials. And are you saying unreasonable assistance? I'm asking you, isn't that reasonable? I would argue that unreasonable assistance means a failure of all three. And there was not a failure of all three. Because when you look at the earlier case law, they talk about all those elements and they say this element, this element, and failure to add an affidavit. There was not a failure of all three. So if you don't consult with your client, as long as you do the other two, that's okay? It depends on, no, I don't agree with that. But in this particular case, this is such a frivolous. What did the 651C affidavit say in this case? There is none. But the fact of the matter is, did she do, was there enough reasonable assistance on her part as to the other two to look at the fact that you have this frivolous triple hearsay statement from an attorney that was messing around with his defendant's acute, you know, the co-defendant. Were there accusations of that? First of all, it's not triple hearsay. It's the child to the detective to. No, it's not. It's hearsay. It's the police officer saying she didn't tell us this and we switched her to false accusation. And he chose her talk of his telling the defendant. That's more than one level of hearsay. But regardless of how many levels it is, the question is this. Was her other assistance of this defendant appropriate? And then we're looking at versus some strange letter of Bob Rataka, of all people who has multiple, I don't think I've ever had a case in which Bob Rataka has been involved that anything comes out and it's clean. It's usually a nightmare. Ms. Kripke, are we supposed to take judicial notice of that? Well, you, Justice Hutchinson brought that out. I'm agreeing with her. And I think it's easy to take judicial notice of Bob Rataka's. Well, we can just look at his behavior in this case. Okay. We don't need to look further. Okay. Well, she admits she probably miscommunicated with her client. So that's one area that she's bungled. She does not attach an affidavit and doesn't explain. That's the second area. Third area is that she bungled is she doesn't explain. So if there are, she doesn't explain why. No, no. She didn't attach and she didn't explain. So that's three. Three. Okay. So if there are four, what are we doing? Majority, it has to be all four? I think you have to look at the overall assistance of what happened in this particular case, what was her petition, her amended petition, what she did and how she presented the petition to the court. The court took it seriously. And the court went through, Judge Shames went through it seriously and addressed each of her issues and wrote a 15-page ruling on why it did not hold water. It wasn't like, what is this mess that has been presented to me? And I think you have to go back to whether or not this even gets up to an actual innocence claim. It's impeachment. This child testified. She implicated her mother during her testimony. She implicated her mother when she was speaking to the people from the CAC, who then related bad testimony. So for Ritaka to say the kid was manipulated by the police not to testify, if she hadn't testified against her mother, I'd say maybe there's some smoke there. Well, she didn't testify against her mother. Her mother pled guilty. Her mother pled guilty. But she did implicate the mother. Because by that time, Mom had pled guilty, and she was looking at 14 years or 15. I can't remember. One out of multiple claims. She was looking. She had made her deal. So why now cannot the daughter testify against the mother? No harm, no foul. And nothing's going to happen any worse to her mother. All she said was, my mother didn't touch me. But she implicated the mother and said the mother was present when all this other stuff went on. That's enough. That's enough. She implicated her mother. And the people from the CAC knew that. And she testified. And when they were talking about all the little apparatus they had there, the evidence people found, it fit the description of what the child was saying. This child was very, very credible. So you can go get an affidavit from Barbara Taka and take it for what it's worth, which is not a lot. Well, we're talking about an affidavit from the detective he names as well. You've heard the questioning. What about an affidavit? You ask him to name the detective. That was the who of my fingers. And then you go to the detective and say, did you say this? So, you know, she didn't do that either. She didn't look at the detectives, apparently, and didn't tell us why. Sometimes we become very entrenched in what we all do with our positions, and it's good to take a step back and look at this objectively from the real world. The defendant gets a letter from his trial counsel saying, hey, I found out you just got framed. Post-conviction counsel is okay ignoring that. That makes sense. Logically and legally, that makes sense. It's okay that she didn't follow up and put it in the petition, didn't get any further information. That's okay when he finds out he's been framed. Well, we don't know that. What we know is that she didn't explain if she did do the research. The other thing, when you ask Justice Burkett about what's the harm in sending it back, the nightmare in sending these cases back is that if you sent it back with a narrow instruction that said all we want is this one question answered, give us an affidavit pertaining to this one specific thing. I can live with that. Not happy, but I can live with it because I still think what I can. No matter how guilty the defendant may be, no matter how horrendous the crime is, probably the most despicable or one of the most despicable sets of facts that we've seen, it doesn't matter. Post-conviction counsel, all appointed counsel, all counsel, whether private or retained or the public defender, all of them have a responsibility to provide a reasonable level of assistance. And if it's not here, it goes back for compliance with 651C. No directions other than compliance in light of what's in this record. The question that I'm going to ask is if you send it back for that one narrowly focused question to be answered, I understand. I recognize it. I don't necessarily agree that it needs to go back. But if you send it back and say I'll start appointing new counsel, this becomes the nightmare that never ends. Then they appoint new counsel who starts dredging up other stuff. And then it goes on for years. This is pure speculation. You don't know what counsel is going to do. Well, if you have new counsel appointed, what you then do is you open up the box to that person screwing up more things. And these things become never-ending cases. When you have a clear-cut case where this man was guilty, it was a reckoning of this court, it was unequivocal in finding that he was guilty in this case. There was no doubt about it. I understand you affirmed. That doesn't mean we made credibility determinations. You didn't make credibility determinations on a reasonable doubt. We're off on a different issue. In any event, the time has expired. Would you like to wrap up with a final thought? The people's position is that Judge James was correct, that this does not rise to the level of actual innocence, that you have the testimony of the child, you have the forensic evidence or the evidence that was collected, and you have the testimony of the CAC person, which all implicated the mother in this case, and which contradicts anything that would show that the child had been manipulated to frame the defendant and not implicate the mother, because the child got up there and testified and implicated the mother. Was the mother prosecuted for perjury, for flipping on state, for breaking her agreement? I have no idea. That's a question that we hear, I have no idea. Because, you know, you keep pounding away at the strength of the state's case, which primarily came down to the testimony of SJ and the other corroboration you mentioned, the items that were found. But if the defendant was in fact framed, if that is, was, I mean, it is potentially, potentially, doubtfully, but potentially, that could happen. There was other evidence in the case. People testified that he wasn't there at times when SJ said he was there. So it was not, you know, SJ's testimony was very strong, and it was corroborated, but that does not mean Ritaka's letter is necessarily false. Is there anything further? No, thank you. Okay. Thank you very much. All right. Ms. Kripke, thank you very much for the argument. Mr. Hildebrand, you may address the floor and the bottom. Well, all I'm asking is for a remand for compliance with 661C. I don't see how that is a horrendous request or how that's going to stir up a big storm below. Asking for counsel to comply with a rule, and this says it right in the rule. You have to attach a supporting affidavit or explain why not. All right. Theoretically, if you looked at this, the post-conviction counsel should probably at some point in time talk to SJ. In order to avoid part of this nightmare, would SJ be the first person to be talked to or maybe the last person to be talked to? SJ does not need to be talked to. Okay. Because if SJ says, well, whatever I testified to, that's what happened, that doesn't change the argument here. Because this is saying, well, SJ was just a child back then. Yes. And it doesn't matter if she's going to exonerate him now. Good. If she doesn't exonerate him. Well, it might be helpful. She may not have to be talked to, but it could be helpful. It could be. It probably should. But for this issue, should it be the first person that's talked to or the last person that's talked to? Well, definitely the last. I mean, first you have to, I mean, just from an investigative procedure, you find out, first of all, didn't Ritaka even write the letter? That's where you first start off with. You'd have to first talk to Ritaka and then get the name of the detective and try to verify this thing. Because otherwise your petition is going to be without any kind of evidentiary support. And that's what counsel is supposed to do. And it probably wouldn't really take all that much time except just picking up the phone and calling Ritaka. And that will tell you where you have to go. The letter that was attached to the post-conviction petition is a photocopy, correct? It's not the original document. So that's always a possibility that it was a forgery. It's always a possibility that the defendant wrote it up himself or had a friend write it up. We don't know. But we do have that. And I think that Ms. Kripke mentioned Malone. Well, I don't know if Malone, defense counsel on appeal, I mean, what about the second part? You have to explain why he didn't attach. I don't know. But the part that Ms. Kripke read was saying something like there was no identifiable evidence to go to to support this. And here we do. We have Ritaka. We have Ritaka's letter. We do have an identifiable source of evidence to go to. And it's obvious that that's what the attorney was required to do, at least follow up on that or explain why she didn't. So if she was hesitant to speak with Mr. Ritaka, fine. But 651C takes care of that because then you just explain I don't feel comfortable. Maybe the judge would say, well, I'll appoint this person because he's not afraid to ask anybody anything. Who knows? But one other point that I'd just like to leave with is that second stage all well-pleaded facts are taken as true. And basically the state has been arguing this credibility determinations to decide this one. Really, we're just asking for follow 651C, send it back for somebody to do that. And that's it. Thank you. Thank you. All right. Let's thank both the counsels sincerely for the quality of their arguments here this morning. The matter will, of course, be taken under advisement or a written decision. We'll issue a new course. There will be a brief recess while we prepare for the next case. Thank you.